(110 So. 809)

**EXCHANGE NAT. BANK OF TAMPA v. ABBOT NURSERY CO., Inc.**

(1 Div. 392.)

(Supreme Court of Alabama. April 29, 1926. Rehearing Denied Jan. 6, 1927.)

1. **Bills and notes** ⟜473—Plea alleging acceptance of nonnegotiable trade acceptance on specified conditions, not performed by drawer without default by acceptor, held not demurrable.

Plea of acceptor of nonnegotiable trade acceptance sued on by indorsee, alleging that instrument was accepted on specified conditions which drawer failed to perform without default on part of acceptor, and that acceptor was therefore relieved from any obligation thereon, held not demurrable.

2. **Sales** ⟜354(8)—Plea alleging trade acceptance sued on was nonnegotiable and acceptor's rescission of order for goods for drawer's breach of condition held not demurrable.

Plea of acceptor of trade acceptance sued on by indorsee, alleging that instrument was nonnegotiable and contingent on delivery of goods purchased by certain date, that acceptor gave order relying on drawer's agreement in specified particulars, which drawer breached, on which acceptor rescinded order, held not demurrable.

3. **Sales** ⟜354(10)—Replication alleging acceptor ordered drawer to withhold shipment, until exclusive selling agency agreement was signed, held to allege waiver of delivery by specified date.

In action on nonnegotiable trade acceptance, defended on ground that drawer failed to deliver heaters for which acceptance was given, replication alleging that drawer was ready and willing to deliver, but that acceptor ordered it to withhold shipment until owner of patent on heaters signed contract giving acceptor exclusive selling agency for heaters, agreed to be given to acceptor, and thereby waived delivery within time prescribed, held sufficiently to allege waiver of failure to ship goods as agreed and prompt execution of exclusive agency contract.

4. **Bills and notes** ⟜315—Notwithstanding prior or oral agreement, drawer of nonnegotiable trade acceptance must show compliance with conditions, and transferee stands in drawer's shoes.

Notwithstanding previous oral agreement for purchase of goods, drawer of nonnegotiable trade acceptance conditionally accepted by buyer, in order to recover, must show compliance with conditions or legal waiver thereof, and transferee before maturity is in drawer's shoes.

On Rehearing.

5. **Pleading** ⟜18—Plea to suit on nonnegotiable trade acceptance, generally alleging breach of condition to secure for acceptor exclusive state agency, held demurrable for uncertainty.

Plea to suit on nonnegotiable trade acceptance, alleging breach of condition to secure for

acceptor exclusive selling agency, *held* demurrable as not alleging when agency was to be secured, when to begin and terminate, and that defendant was ready, willing, and able to accept such agency.

Appeal from Circuit Court, Mobile County; Saffold Berney, Judge.

Action by the Exchange National Bank of Tampa against the Abbot Nursery Company, Inc. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

The complaint is as follows:

Count 1. The plaintiff claims of the defendant the sum of $15,000, due on a bill of exchange drawn by Keller Heating Company on the 11th day of June, 1923, and accepted by the defendant, payable to said Keller Heating Company, on December 1, 1923, which bill, before maturity, was indorsed to the plaintiff, and with interest thereon is still due and unpaid.

Count 2. Plaintiff claims of the defendant the sum of $15,000, with interest thereon for this, that the defendant, on, to wit, the 11th day of June, 1923, accepted a certain bill of exchange drawn on it by Keller Heating Company, and payable to the order of said Keller Heating Company on December 1, 1923, in words and figures as follows:

"Trade Acceptance.

"No. 1. A 2743. June 11, 1923.

"On December 1, 1923, pay to the order of ourselves fifteen thousand and no/100 dollars $15,000.00/00 (with exchange) with interest after maturity at the rate of 8 per cent. per annum.

"The obligation of the acceptor hereof arises out of the purchase of goods from the drawer.

"Now, should it become necessary to collect this through an attorney, either of us, whether maker, security, or indorser, hereby agree to pay all costs of such collection, including a reasonable attorney's fee.

"The drawers and indorsers severally waive presentment for payment, protest, and notice and nonpayment of this note.

"(Part payment for 5,000 Vlag automatic grove heaters and contingent upon delivery prior to October 1, 1923.)
"Keller Heating Company,
"By H. J. Keller, Pres.
"To Abbot Nursery Co., Mobile, Ala."

Count 2 further avers that said bill was accepted by defendant June 11, 1923; that, before maturity, it was indorsed to plaintiff by the Keller Heating Company; that it is the property of plaintiff, is due and unpaid. And it is further averred that the said bill of exchange was given in part payment for 5,000 Vlag heaters, which defendant agreed to purchase from Keller Heating Company, which were to be delivered by the Keller Heating Company to the defendant prior to the first day of October, 1923, and the plaintiff avers that said Keller Heating Company was ready, able, and willing to deliver said 5,000 heaters prior to the first of October, 1923, but that the defendant wrongfully re-

fused to accept delivery thereof on, to wit, the 11th day of September, 1923.

Pleas 2, 6, and 9, as amended, are as follows:

(2) Defendant says that the trade acceptance, the basis of this suit, arose as follows: That the defendant entered into a verbal agreement with the Keller Heating Company, the drawer of the said trade acceptance, whereby the said Keller Heating Company was to make and ship to the defendant, 5,000 Vlag automatic grove heaters, with the following express conditions and agreements; that the said Keller Heating Company would deliver the said heaters prior to October 1, 1923; that the said heaters were to have a regulating device for adjusting the height of the nipple in the cup; and that the said Keller Heating Company would assure the defendant that it would be the sole distributor for the state of Alabama; all of which defendant relied on in accepting said trade acceptance. The defendant further alleges that the said Keller Heating Company, the drawer of the said trade acceptance, entered into this agreement through its duly authorized agent, H. J. Keller, and further agreed at that time to have said stipulations put into a written contract, and the defendant alleges that the said Keller Heating Company shipped two samples of the said heaters it had agreed to build, and neither had the said regulating device; that the defendant thereupon notified the said Keller Heating Company twice to forward the said device for the said heaters before it would agree to accept any of them, which the said Keller Heating Company failed to do; that the said Keller Heating Company further failed to assure the defendant that it should be sole distributor of the heaters in the state of Alabama, whereupon the defendant notified the said Keller Heating Company that it would not accept any of its heaters without the above conditions and representations were complied with, all of which conditions the said Keller Heating Company failed to comply with and wrongfully failed to deliver the said 5,000 Vlag automatic grove heaters before October 1, 1923, as expressly stipulated and agreed upon, wherefore the defendant says it is not liable under the said trade acceptance, either to the said drawer of the said bill of exchange, or to any purchaser thereof.

(6) The defendant says that the instrument sued upon was accepted and given to the drawer, Keller Heating Company, on the following conditions, viz.:

"I am inclosing the three trade acceptances indorsed by myself, E. J. Krause, and C. H. Krause, covering the payments on the 5,000 grove heaters, to be delivered prior to October 1st. It is our understanding that you absolutely guarantee the heaters, both as to construction and efficiency, and that, with the placing of this order, we are assured of being continued as the sole distributor for the state of Alabama, and it is with the above mutual understanding that we mail you inclosed order, together with the trade acceptances covering payment."

The defendant says that the said conditions were set out in a letter from the defendant to the Keller Heating Company, of date June 20, 1923, and which said letter, together with

the trade acceptances sued upon, were forwarded to the said Keller Heating Company, the drawer, and received by the drawer, and that the said provisions set out in said letter were pursuant to a verbal agreement made between the Keller Heating Company and the defendant wherein the said conditions were agreed upon, and relying upon said agreement the said trade acceptance was accepted by the defendant, and the defendant alleges that the said Keller Heating Company, without fault on the part of the defendant, failed to comply with any of the above said conditions and wrongfully failed to deliver the said heaters prior to October 1, 1923, as agreed upon and as set out upon the said trade acceptance, and the defendant refused to pay said acceptance, wherefore the defendant says, by reason of the said Keller Heating Company's wrongful failure to comply with the said conditions upon which the purchase was made, that it was relieved from any obligation under said trade acceptance, to the said Keller Heating Company, or to any purchaser thereof.

(9) The defendant says that the trade acceptance or instrument sued on was nonnegotiable, containing on its face the following provisions, viz.:

"The obligation of the acceptor hereof arises out of the purchase of goods from the drawer.

"Part payment for 5,000 Vlag automatic grove heaters and contingent upon delivery prior to October 1, 1923."

That the trade acceptance sued on was given in part payment for 5,000 automatic grove heaters which the defendant agreed to purchase from the Keller Heating Company, the drawer, under an express agreement with the said drawer that it was to secure for the defendant the exclusive agency in the state of Alabama for the sale of the said heaters. The defendant further says that relying upon said agreement it accepted said trade acceptance on said condition. The defendant alleges that the drawer breached the said agreement in that it failed to secure for the defendant the said agency, and defendant thereupon rescinded its order for the said heaters, wherefore the defendant says it is not indebted, under the said trade acceptance, to the drawer or to the purchaser thereof.

This ground of demurrer was interposed to plea 9:

(a) Because it does not appear from said plea that the Keller Heating Company did not fully comply with its contract, but it does appear from said plea that the defendant asserted a rescission of said contract and refused to perform the same because of the failure of the Keller Heating Company to secure an exclusive agency for the defendant in the state of Alabama for the sale of such heaters, and it does not appear from said plea when said stipulation was to be performed or what the terms of said agency were to be, or the time during which it was to continue, or that the defendant was ready, willing, and able to accept said agency and to perform the duties thereof, nor does it appear that the time for performance of said stipulation had arrived before the defendant undertook to rescind said contract.

The other pleas set up in varying forms the same matters set up in pleas 2, 6, and 9.

Plaintiff's replication 4 is as follows:

(4) For further replication the plaintiff says that the Keller Heating Company was ready, willing, and able to have delivered the said heaters on October 1, 1923, in accordance with the said contract, but before said day, the defendant ordered it not to ship said heaters until Piet Vlag, who owned the patent upon said heaters and who alone had control of the distribution thereof and of the agency which the defendant sought, had signed a written contract with the defendant providing for such agency and thereby waived the delivery of heaters on October 1, 1923, and thereafter, and on the 15th day of October, 1923, the said Piet Vlag did sign said contract and forwarded, by registered mail to defendant's president, and telegraphed him on October 15, 1923, that he had done so, but the defendant, nevertheless, thereafter repudiated said contract and declined to receive said heaters, although the Keller Heating Company was ready, willing, and able to have delivered said heaters upon demand, in accordance with said contract.

Harry T. Smith & Caffey, of Mobile, for appellant.

The agreement for exclusive agency was an independent covenant and not a condition precedent to liability for the agreed price of the goods. Breach of that covenant will not support a rescission of the contract. Springfield Seed Co. v. Walt, 94 Mo. App. 76, 67 S. W. 938; 13 C. J. 567; Thornton v. Wynn, 12 Wheat. 184, 6 L. Ed. 595; Lyon v. Bertram, 20 How. 149, 15 L. Ed. 847; Hafer v. Cole, 176 Ala. 247, 57 So. 757; El Paso & S. W. R. Co. v. Eichel (Tex. Civ. App.) 130 S. W. 922; Williston on Contracts, § 872. If the acceptor of a nonnegotiable bill of exchange makes any representation to the purchaser, whether it be contained in the acceptance or be given by parol, by which he induces the purchaser to believe that the acceptance will be paid at its maturity, or payment will be denied only in a certain event, he cannot thereafter refuse payment upon some other pretext, but must abide by his representation in good faith. 21 C. J. 1143; Johnson v. Glasscock, 2 Ala. 519; Drake v. Foster, 28 Ala. 649; Plant & Co. v. Voegelin, 30 Ala. 160; Brown v. First Nat. Bank, 103 Ala. 123, 15 So. 435. The testimony bearing on the defenses was oral, and its credibility was for the jury; the general charge with hypothesis was improperly given. Brown v. Mobile Elec. Co., 207 Ala. 61, 91 So. 802; Dorough v. Ala. Power Co., 200 Ala. 605, 76 So. 963; Shipp v. Shelton, 193 Ala. 658, 69 So. 102; Scott v. State, 110 Ala. 48, 20 So. 468; Davidson v. State, 63 Ala. 432. A mere breach of the contract by one party does not of itself terminate the contract, but merely confers upon the other party the right either to rescind or waive the breach. If he waives the breach, he must himself

perform. Lowy v. Rosengrant, 196 Ala. 337, 71 So. 439.

Gordon & Edington, of Mobile, for appellee.

The condition upon which the acceptance was given was dependent and not an independent condition; and, until fulfilled, no obligation rested on defendant. Wise v. Sparks, 198 Ala. 96, 73 So. 394; Mobile Elec. Co. v. Nelson, 209 Ala. 554, 96 So. 713; McCormick v. Badham, 191 Ala. 343, 67 So. 609. Plaintiff's replications were not sufficient. Minge v. Clark, 190 Ala. 388, 67 So. 510; Clancy v. Taylor, 12 Ala. App. 557, 68 So. 522; H. A. & B. R. Co. v. South, 112 Ala. 642, 20 So. 1003; Bank v. Steiner, 168 Ala. 243, 53 So. 172.

ANDERSON, C. J. The complaint in this case contained two counts, the first being upon a negotiable instrument, and the second upon a nonnegotiable trade acceptance, which is set out in hæc verba. The first count was practically abandoned, but, if not, it should or could well be upon the next trial. After many special pleas, and we might add that some of them were unnecessary repetitions, and after overruling the plaintiff's demurrers thereto and sustaining the defendant's demurrers to all of the plaintiff's special replications, the evidence was taken and the court gave the general affirmative charge for the defendant.

[1-3] Counsel for the appellee, with commendable candor, concede that as there was a conflict in the evidence as to the other pleas, the action of the trial court in giving said charge can be justified only upon the theory that pleas 6 and 9, one or both, were proved without dispute and upon the further condition that said pleas, or either of them, were not subject to the plaintiff's demurrers thereto, and that the defendant's demurrers were properly sustained to the plaintiff's replications thereto. We do not think that either of said pleas 6 or 9 was subject to the plaintiff's demurrers. We also think that most of the plaintiff's replications were either faulty or provable under the general replication, except replication 4. As we understand replication 4, it sets up a waiver both as to a failure to ship the goods before the 1st of October, as well as a prompt execution and return of the contract as accompanying the order and trade acceptance sent to the "Keller Heating Company" on June 20, 1923.

[4] Since this case must be reversed, we think the pleading can be somewhat simplified upon the next trial, though we wish to suggest that, whatever the previous oral agreement may have been, the trade acceptance was sent in conditionally, and in order for the defendant to be liable thereupon it is necessary for the plaintiff to show a compliance with the conditions outlined when the order and acceptance were sent in June 20, 1923, or a legal waiver of same, and, the acceptance being nonnegotiable, the plaintiff, in effect, stood in the shoes of the vendor the "Keller Company." We do not mean to hold that, under some circumstances, the acceptor or indorser of a nonnegotiable paper cannot by his conduct estop himself from setting up defenses which are available to the original debtor, but we do not think that the recitals in the trade acceptance should be so narrowly construed as to preclude this defendant from setting up a failure to make it the sole agent for handling and selling the heaters; it says for goods sold, and that is broad enough to include the terms and conditions of the contract of sale.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

SAYRE, GARDNER, and MILLER, JJ., concur.

### On Rehearing.

ANDERSON, C. J. [5] Upon a reconsideration of this case, the court is of the opinion and so holds that the defendant's special plea 9 was subject to ground (a) of plaintiff's demurrer 1. It does not aver when the agency was to be secured, when it was to begin and terminate, or that the defendant was ready, able, and willing to accept said agency. The trial court erred in not sustaining plaintiff's demurrer to this plea.

The other special pleas were not subject to the plaintiff's demurrer.

We are still of the opinion that the trial court erred in sustaining the defendant's demurrer to the plaintiff's replication 4 to defendant's pleas 2, 3, 5, 6, 7, 8, and 10 as answers to the second count of the complainant.

The former opinion is, to this extent, modified, and the application for a rehearing is overruled.

SAYRE, GARDNER, and MILLER, JJ., concur.